# United States Court of Appeals
## for the Second Circuit

August Term, 2022

(Argued: June 27, 2023　　　Decided: January 26, 2024)

Docket No. 22-751-cv

———————————————————

KORISZAN REESE, BRIAN OWENS, MIRIAN ROJAS,

*Plaintiffs-Appellants*,

JASON FARINA, on behalf of himself and all others similarly situated,
CHARLES GARDNER, on behalf of himself and all others similarly situated,
DOROTHY TROIANO, on behalf of herself and all others similarly situated,
DELORIS RITCHIE,

*Plaintiffs*,

v.

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, dba MTA BRIDGES
AND TUNNELS,

*Defendant-Appellee*,

METROPOLITAN TRANSPORTATION AUTHORITY; TRANSWORLD
SYSTEMS, INC.; CONDUENT STATE & LOCAL SOLUTIONS, INC.;
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP; ALLIANCEONE

RECEIVABLES MANAGEMENT INC.; NEW YORK STATE THRUWAY
AUTHORITY; THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

*Defendants.*[*]

_____

Before:

      LYNCH and LOHIER, *Circuit Judges.*[†]

      After the Triborough Bridge and Tunnel Authority (TBTA) removed toll booths from its crossings and implemented a "Cashless Tolling" program, the Plaintiffs in this appeal incurred substantial fines when they repeatedly failed to pay tolls at TBTA crossings. TBTA accepted a reduced amount to resolve the Plaintiffs' violations. The Plaintiffs then filed this lawsuit, alleging that the fines were unconstitutional under the Eight Amendment's Excessive Fines Clause and that TBTA was unjustly enriched under New York law. On summary judgment, the United States District Court for the Southern District of New York (Castel, <u>J.</u>) applied the factors set forth in <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998), and determined that the fines were neither unconstitutionally excessive nor inequitable under state law. On appeal, the Plaintiffs challenge the District Court's application of three of the four <u>Bajakajian</u> factors: the essence of the violation, the relationship between the fine paid and the maximum possible fine, and the nature of the harm to TBTA. We find no error in the District Court's application of these factors. We also agree with the District Court's decision to grant summary judgment to TBTA on the Plaintiffs' unjust enrichment claim under state law. We therefore **AFFIRM**.

                    PAUL V. SWEENY (Stephen J. Fearon, Jr., *on the brief*),
                    Squitieri & Fearon, LLP, New York, NY *for Plaintiffs-Appellants*.

[*] The Clerk of Court is directed to amend the official caption to conform with the above.
[†] Judge Joseph F. Bianco, originally a member of the panel, recused himself from this case. This appeal is being decided by the two remaining members of the panel, who are in agreement. <u>See</u> 2d Cir. IOP E(b).

ESTEBAN MORALES (Joshua Briones, Todd Rosenbaum, *on the brief*), Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Los Angeles, CA and New York, NY *for Defendant-Appellee*.

LOHIER, *Circuit Judge*:

The Triborough Bridge and Tunnel Authority (TBTA) is a public authority in New York that, under the name MTA Bridges and Tunnels, operates several river crossings within New York City. Beginning in 2016 TBTA actively replaced the tollbooths in each of its facilities with gantries and cameras. Under TBTA's "Cashless Tolling" program, drivers are able to continue through the gantries at speed without stopping. Drivers are then billed by mail or through a prepaid debit account known as E-ZPass, which relies on a transponder (popularly known as an E-ZPass tag) located inside the car.

TBTA fines drivers who cross its bridges and tunnels but fail to pay the tolls. The fines can be as high as $100 for each unpaid toll and can accumulate – indeed, the three Plaintiffs in this appeal were charged a total of $1,000, $4,000, and $43,550. Drivers fail to pay the TBTA tolls for various reasons. When a driver is billed by mail, for example, TBTA sometimes sends the original bill and any follow-up Notices of Violation to the wrong address (because, say, the driver has moved). Or E-ZPass drivers with malfunctioning transponders assume that

toll charges are automatically deducted from their E-ZPass account and overlook the bills that TBTA later mails to them.

Each of the three Plaintiffs in this appeal was fined for multiple violations but ultimately paid a significantly reduced total fine to TBTA. After doing so, the Plaintiffs brought suit against TBTA under 42 U.S.C. § 1983, arguing that their fines were unconstitutionally excessive under the Eighth Amendment's Excessive Fines Clause. Following discovery, the United States District Court for the Southern District of New York (Castel, <u>J.</u>) granted summary judgment to TBTA. <u>Rojas v. Triborough Bridge & Tunnel Auth.</u>, No. 18-cv-1433, 2022 WL 748457, at *17 (S.D.N.Y. Mar. 10, 2022). We **AFFIRM** the judgment of the District Court.

**BACKGROUND**

In 2016 and 2017 TBTA implemented "Cashless Tolling" (also known as "Open Road Tolling") at its crossings. Cashless Tolling allows a driver crossing the Henry Hudson Bridge, Verrazano-Narrows Bridge, Queens Midtown Tunnel, or any of the six other bridges and tunnels that TBTA operates to continue at the speed of traffic under a gantry, rather than slowing for a toll booth. Each gantry uses two types of equipment to collect tolls. For drivers enrolled in the E-ZPass

program who have transponders installed in their vehicles, an electronic reader mounted on the gantry reads the transponder and collects the toll from the driver's prepaid E-ZPass account. Otherwise, a camera mounted on the gantry captures an image of the license plate, and the TBTA or its agent then sends a bill for the toll to the address at which the vehicle is registered according to Department of Motor Vehicles (DMV) records.

A vehicle owner who fails to pay a toll at a TBTA crossing "commits a violation of toll collection regulations" and is liable for a "fee" of $50 or $100, depending on the facility crossed, in addition to the toll itself. N.Y. Comp. Codes R. & Regs. tit. 21, § 1021.3(a), (b). TBTA's "authorized agent" mails a "Notice of Violation" to the liable owner, id. § 1021.3(c), but TBTA retains the authority to dismiss or reduce the fee for a toll violation, id. § 1021.3(g)(3).

As we now explain, each of the three Plaintiffs-Appellants in this case owned a vehicle that crossed TBTA facilities multiple times, failed to pay the tolls at those crossings, and subsequently incurred fees.

First, Plaintiff Mirian Rojas committed 41 toll violations at several TBTA facilities between February 2017 and January 2018 and was assessed $4,000 in fees, even though the underlying tolls amounted to only $381.50. Rojas was

initially billed by mail (in one instance she also used an invalid E-ZPass tag), but the bills and Notices of Violation were sent to an address where she no longer lived. Although the parties dispute when Rojas sent an updated address to the DMV, TBTA eventually accepted a payment of $720 from Rojas and dismissed the remaining violation fees in September 2019.

Second, Plaintiff Koriszan Reese was assessed $1,000 in fees for ten toll violations at TBTA facilities between August and November 2018. The total amount of the underlying tolls was $85. As it turned out, Reese had an E-ZPass transponder in her vehicle associated with her friend's E-ZPass account, but the E-ZPass tag was invalid. Like Rojas, Reese had failed to update her address with the DMV. As a result, her toll bills and Notices of Violation were sent to an old address. In September 2019 TBTA accepted a payment of $500 from Reese in full satisfaction of the assessed fines.

Last, Plaintiff Brian Owens, a restaurateur, had many more violations – 439 over a period stretching from February 2017 to June 2019 – than either Rojas or Reese, and was assessed $43,550 for $3,810 in unpaid tolls over that period. Like Rojas, Owens failed to pay toll bills that TBTA mailed to him. Owens had an E-ZPass account that he used to pay his tolls from 2005 until February 2017, but the

E-ZPass readers were unable to properly read his transponder after he acquired a new vehicle in February 2017. TBTA sent toll bills and Notices of Violation to both Owens's proper home address and a mailbox registered to him. Owens discovered the bills only after TBTA police impounded his car. In September 2019 TBTA accepted $8,170 from Owens in full satisfaction of the fees and tolls he owed.

After paying their fines, the Plaintiffs commenced a putative class action against TBTA. When the District Court dismissed their complaint in part, the Plaintiffs filed an amended complaint claiming a violation of the Eighth Amendment's Excessive Fines Clause and unjust enrichment under New York law.[1] At the close of discovery, TBTA moved for summary judgment. The District Court granted summary judgment in favor of TBTA on the ground that the fines were neither unconstitutionally excessive nor inequitable under New York law. This appeal followed.

---

[1] The Plaintiffs also brought a § 1983 claim against the Port Authority of New York and New Jersey based on similar toll violations at that authority's facilities. The District Court ultimately granted summary judgment to the Port Authority on that claim. Before us, the Plaintiffs have challenged the grant of summary judgment only with respect to their claims against TBTA.

## I

"Summary judgment is appropriate only when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Williams v. N.Y.C. Hous. Auth., 61 F.4th 55, 68 (2d Cir. 2023) (quotation marks omitted). We review the District Court's grant of summary judgment de novo, construing the evidence in the light most favorable to the Plaintiffs and drawing all reasonable inferences in their favor. Badilla v. Midwest Air Traffic Control Serv., Inc., 8 F.4th 105, 120 (2d Cir. 2021).

## II

The Eighth Amendment's Excessive Fines Clause "guards against abuses of government's punitive or criminal-law-enforcement authority," Timbs v. Indiana, 139 S. Ct. 682, 686 (2019), and "limit[s] the ability of the sovereign to use its prosecutorial power, including the power to collect fines, for improper ends," Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 266 (1989). It applies to New York State and its instrumentalities (including TBTA) under the Fourteenth Amendment's Due Process Clause. See Timbs, 139 S. Ct. at 689. Because the parties agree that the Excessive Fines Clause covers the fines

imposed here, [2] the question presented to us on appeal is whether the challenged

fine is "grossly disproportional to the gravity of" the Plaintiffs' violations and

thus "unconstitutionally excessive." United States v. Viloski, 814 F.3d 104, 110

(2d Cir. 2016) (quotation marks omitted).

To resolve that question, we draw on the four so-called "Bajakajian

factors" set forth in United States v. Bajakajian, 524 U.S. 321 (1998):[3]

> (1) the essence of the crime of the defendant and its
> relation to other criminal activity, (2) whether the
> defendant fits into the class of persons for whom the
> statute was principally designed, (3) the maximum
> sentence and fine that could have been imposed, and

---

[2] The Excessive Fines Clause applies only to protect against "punitive," rather than "remedial," payments to the government. United States v. Viloski, 814 F.3d 104, 109 (2d Cir. 2016) (quotation marks omitted). The District Court rejected TBTA's argument that its fines were not punitive, and TBTA does not challenge this conclusion on appeal. We thus assume without deciding that the District Court correctly determined that the fines are punitive.

[3] We have frequently applied the Bajakajian test to criminal forfeitures. We have also applied it to a civil in rem forfeiture brought in lieu of a criminal action. See von Hofe v. United States, 492 F.3d 175, 179, 186 (2d Cir. 2007). We have not yet applied the Bajakajian factors in a precedential case in which no criminal conduct is alleged, although we have previously done so by summary order. Oles v. City of New York, No. 22-1620-cv, 2023 WL 3263620, at *2 (2d Cir. May 5, 2023). We note, however, that the Ninth Circuit has applied its version of the Bajakajian factors in a case involving municipal parking fines. See Pimentel v. City of Los Angeles, 974 F.3d 917, 921–22 (9th Cir. 2020). And none of the parties on appeal asks us to treat the Bajakajian factors differently because of the nature of this case. So we use the factors we have developed in the criminal and civil forfeiture contexts.

> (4) the nature of the harm caused by the defendant's
> conduct.

United States v. George, 779 F.3d 113, 122 (2d Cir. 2015) (quotation marks

omitted). These factors are not exhaustive. See Viloski, 814 F.3d at 110–11. But

the parties' arguments are focused on only the four Bajakajian factors, and we

follow suit.[4]

In considering any or all of these factors, we are "mindful of Bajakajian's

admonition 'that any judicial determination regarding the gravity of a particular

. . . offense will be inherently imprecise.'" Id. at 113 (quoting Bajakajian, 524 U.S.

at 336). "Therefore, although we review the constitutionality of the challenged

[fine] de novo, we may invalidate it only if it 'is grossly disproportional to the

gravity of the . . . offense.'" Id. (quoting Bajakajian, 524 U.S. at 337).

The parties do not directly address whether, on a given set of undisputed

facts, a proportionality analysis under the Eighth Amendment's Excessive Fines

clause presents a pure question of law to be decided by a judge or a question of

fact that must be decided by a jury, unless no reasonable factfinder could rule

---

[4] Because the Plaintiffs acknowledge that they fit into the class of persons for whom the fine was principally designed, they do not dispute that the second Bajakajian factor favors TBTA. Accordingly, we focus our review on the three remaining Bajakajian factors.

one way or the other.  The Plaintiffs adopt the latter standard of review in their

briefing, and TBTA does not challenge that approach.  We have serious reason to

doubt that the Plaintiffs are correct.  Notably, <u>Bajakajian</u> itself contemplates

"<u>judicial</u> determination[s] regarding the gravity of a particular criminal offense,"

to be made by "the districts courts in the first instance, and the courts of appeals,

reviewing the proportionality determination <u>de</u> <u>novo</u>."  524 U.S. at 336 (emphasis

added).  And we have never implied that these questions of proportionality are

in the jury's province to determine.  But because we would affirm the District

Court's grant of summary judgment in favor of TBTA under either standard

(question of law or question of fact), and the parties have provided us with no

guidance on the issue, we assume without deciding that proportionality is a

question of fact.

## A

We start with the violations in this case.  The Plaintiffs argue that the

District Court ignored their "lack of culpability" in incurring the fines, which

stemmed, they say, from the TBTA's transition to Cashless Tolling.  Appellants'

Br. 29.  But the District Court explicitly "accept[ed]" Owens's "explanation that

he was unaware that TBTA facilities were not reading his E-ZPass, and that, as a

busy restaura[]teur, he was not closely monitoring his E-ZPass account or the mailings addressed to him." Rojas, 2022 WL 748457, at *9. The District Court also recognized that "the essence of [Rojas's] violation was a failure to make timely payments for toll crossings due to her inattention," and not any willful conduct or intentional fraud. Id. at *12. And it understood that Reese's violations were likewise caused by "inattention or a misunderstanding of both E-ZPass rules and the status of her current address on file with the DMV." Id. at *15. The Plaintiffs have therefore failed to identify any error in the District Court's consideration of the first Bajakajian factor.

The Plaintiffs suggest instead that these findings create a genuine dispute of material fact as to whether the fines were unconstitutionally excessive. In support, the Plaintiffs contend that the fines imposed against them are grossly disproportionate precisely because their violations were not willful, witting, or fraudulent, and were instead the product of TBTA's bumpy switch to Cashless Tolling, which they say was initially "beset with issues." Appellants' Br. 29.

We disagree with this argument. To start, the Plaintiffs assume that the question on appeal is whether a reasonable jury could weigh the Bajakajian

factors in a way that it would find that the fines were disproportional and thus constitutionally excessive.

Fines are a constitutionally permissible form of penalty for even strict liability offenses. See Staples v. United States, 511 U.S. 600, 617–18 (1994) (describing "public welfare offenses"). Mindful that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and that "any judicial determination regarding the gravity of a particular . . . offense will be inherently imprecise," Bajakajian, 524 U.S. at 336, we find the penalties authorized by the New York legislature for similar offenses, we well as other state legislatures for identical offenses, instructive in determining the essence of the offense. [5] Cf. Grashoff v. Adams, 65 F.4th 910, 919 (7th Cir. 2023) (concluding that "penalties [authorized by the legislatures of Indiana and several other states] for similar conduct are relevant evidence of legislative judgments about the seriousness of the offense").

---

[5] In so holding, we do not mean to suggest that a State that singles out particular conduct for harsher treatment by authorizing larger fines than it authorizes for similar conduct or than other States authorize for the same conduct necessarily acts unconstitutionally.

The fines that the New York legislature has authorized for toll violations are roughly equivalent to those authorized for other traffic violations. N.Y. Veh. & Traf. Law § 237(2)(a) authorizes a $50 fine for each parking violation and, in cities with populations greater than one million, a $100 fine for each "stopping and standing" parking violation.[6] Likewise, a driver in New York City who fails to comply with a traffic signal and is caught by an automatic camera must pay a $50 fine, plus an additional $25 fine for each violation to which he or she does not timely respond to a notice of liability. N.Y. Veh. & Traf. Law § 1111-a(e). A driver who violates a bus lane restriction in New York City is liable for a fine of $50 for a first violation, $100 for a second violation in a twelve-month period, $150 for a third such violation, $200 for a fourth such violation, and $250 for each subsequent such violation, in addition to a $25 dollar fine for each violation if he or she fails to timely respond to a notice of liability. N.Y. Veh. & Traf. Law § 1111-c. These fines are all comparable, both in their purpose and the amount assessed, to the toll violation fees imposed here — some relate to violations that aim at similar regulatory goals and do not involve dangerous conduct; some

---

[6] We have previously concluded that the imposition of the maximum fine permitted by N.Y. Veh. & Traf. Law §§ 237(2)(a), 1809-a(1) – $100 per violation plus a $15 mandatory surcharge – was not constitutionally excessive. Oles, 2023 WL 3263620, at *2.

contain additional penalties for untimely payment; and all are strict liability offenses.

Similarly, other States impose toll violation fines in amounts comparable to those imposed by New York. Illinois charges $20 per violation, plus an additional $50 fine if the toll is not paid within 30 days. Ill. Admin. Code tit. 92, §§ 2520.269(e), 2520.750. Texas charges $250 per toll violation, with additional fees assessed upon each notice of nonpayment. Tex. Transp. Code Ann. § 366.178. Georgia charges $25 dollars per violation, plus an additional $70 if the fine is unpaid and goes to collections. Ga. Code Ann. § 32-10-64(c)(1). Virginia charges $25 for a toll violation paid within 60 days of receiving notice of the fee, rising to $100 if payment is further delayed and to $500 after multiple offenses and if the matter proceeds to court. Va. Code Ann. § 46.2-819.3(B), (C).

New York's toll violation fines are thus in line with those assessed by other States, and so, assuming that those other States' assessments are relevant to our proportionality analysis, the fines of $50 per violation imposed on Owens (and less than $20 per violation for the other two Plaintiffs) are not excessive in relation to the seriousness of such offenses as judged by legislatures and regulators around the country.

In sum, and accepting for the sake of argument the Plaintiffs'

characterization of their toll violations as the inadvertent upshot of adjusting to a

new tolling system, we cannot say that the resulting fines were excessive based

solely on the first <u>Bajakajian</u> factor.

**B**

Under the third <u>Bajakajian</u> factor, the District Court was required to

compare the fines that the Plaintiffs paid with the maximum fine that TBTA

could have imposed.  Here, TBTA's regulations direct it to assess $50 or $100 for

each toll violation, depending on where the violation occurred.  N.Y. Comp.

Codes R. & Regs. tit. 21, § 1021.3(a), (b).  Owens paid an average of $18.61 per

violation, Rojas paid $17.56, and Reese, who, unlike the other Plaintiffs,

exclusively committed violations that triggered $100 fines, paid $50.  The District

Court reviewed those calculations and determined that each Plaintiff paid well

below the maximum fine that could have been assessed under TBTA's

regulations, and that the third factor strongly favored TBTA.

Resisting this conclusion, the Plaintiffs assert that the District Court should

have compared their fines to the purportedly more realistic measure of

maximum fines contained in TBTA's internal "Violation Fee Waiver Matrix."

TBTA uses that matrix to determine how little it is prepared to accept to resolve a dispute with "an alleged toll violator [who] refuses to pay and disputes the charges." Appellants' Br. 21. The Violation Fee Waiver Matrix, the Plaintiffs say, shows that TBTA will accept 20 percent of the total fine amount for certain classes of violators that include each Plaintiff, and that internal benchmark of 20 percent of the total fine should govern the analysis under the third Bajakajian factor rather than the maximum fines stated in TBTA's regulations.

Not so. In applying the third Bajakajian factor to the criminal context, we consider statutory penalties as well as the advisory Sentencing Guidelines in determining the maximum potential penalty. United States v. Castello, 611 F.3d 116, 123 (2d Cir. 2010); United States v. Elfgeeh, 515 F.3d 100, 139 (2d Cir. 2008); von Hofe v. United States, 492 F.3d 175, 187 (2d Cir. 2007). Indeed, in George, we highlighted the maximum statutory fine rather than the applicable Guidelines range, which we noted fell "well below" the statutory maximum penalty. 779 F.3d at 123–24.

Just as it is permissible to examine statutory penalty ranges in the criminal forfeiture context, it was permissible for the District Court to consider the maximum penalties under TBTA's regulations. TBTA is of course free to

promulgate internal guidelines for settling fee disputes. Its regulations explicitly give it the discretionary authority to reduce a violator's fee. N.Y. Comp. Codes R. & Regs. tit. 21, § 1021.3(g)(3). Under certain circumstances these internal guidelines may be relevant to the Bajakajian analysis, which we have described as "necessarily fact-intensive." von Hofe, 492 F.3d at 186. But here, where TBTA was authorized to assess and seek the maximum fine allowed by its regulations, the District Court properly used those regulations to determine the maximum possible fine and to use that as the benchmark to assess the actual fines imposed on the Plaintiffs.

The Plaintiffs alternatively contend that Owens and Reese did pay the maximum fines for some of their violations. Owens paid $8,170 to resolve 439 toll violations, but he argues that he paid the full $50 or $100 fine to resolve each of 84 toll violations and $20 to resolve an additional violation, and his remaining 354 violations were dismissed. Reese likewise claims that rather than paying $500 to resolve a $1,000 liability arising from ten violations, she paid the full $100 fine to resolve five violations and the remaining five violations were dismissed. As support, the Plaintiffs point to "Violation Citation Detail" forms that list each of the Plaintiffs' toll violations, the fine assessed, and the fine ultimately

collected. The forms, we agree, reveal that TBTA recorded the Plaintiffs' payments just as the Plaintiffs claim.

We nonetheless find the Plaintiffs' argument unpersuasive. In applying the third <u>Bajakajian</u> factor, what matters is the actual misconduct that triggered the fines, not how the fines were recorded. In <u>Castello</u>, for example, a criminal defendant "failed to file CTRs [currency transaction reports] for thousands of . . . checks exceeding $10,000," 611 F.3d at 118. He was convicted of only one criminal count in violation of 31 U.S.C. § 5313(a), despite having committed thousands of violations of § 5313(a). <u>See</u> <u>United States v. Castello</u>, No. 04-336, 2009 WL 1505271, at *1 (E.D.N.Y. May 21, 2009), <u>vacated</u>, 611 F.3d 116 (2d Cir. 2010). In determining that Castello's forfeiture was not unconstitutionally excessive, we reviewed the applicable Guidelines sentencing range, which turned on "the amount of money involved" in the multiple transactions. <u>Castello</u>, 611 F.3d at 123 (quotation marks omitted).

Here, too, we consider the actual conduct for which the Plaintiffs incurred fines, not the specific offenses for which they are penalized. No one disputes that the Plaintiffs engaged in conduct that made them liable for fines at least twice as

large as the fines they paid.  We therefore conclude that the District Court did

not err in applying the third <u>Bajakajian</u> factor.

## C

Finally, the Plaintiffs challenge the District Court's application of the last

<u>Bajakajian</u> factor – the nature of the harm.  They concede that their failure to pay

tolls caused TBTA at least some fiscal harm, but dispute the District Court's

characterization of that harm.  To the contrary, the Plaintiffs maintain, TBTA's

ability to recoup more through tolls and fees than it lost due to missed tolls

means that the harm it suffered was minimal or nonexistent.  The Plaintiffs

further contend that "a reasonable factfinder could determine that the fines . . .

were grossly disproportional to the underlying toll violations" because the fines

"do not serve a safety purpose" and "are repeatedly assessed against the same

unsuspecting vehicle owners." Appellants' Br. 37.

These arguments are doubly flawed.  First, they ignore that the harm to

TBTA is minimized precisely <u>because</u> of the fines the Plaintiffs now challenge.

TBTA avoids financial harm by assessing fines that are greater than the cost of

the lost toll.  The District Court thus properly recognized that the fiscal harm to

TBTA, absent the imposition of the challenged fees, would be substantial.

Second, the arguments are undermined by the Plaintiffs' concessions before the District Court, where they accepted that TBTA implemented Cashless Tolling in part to "reduce traffic, increase safety, provide environmental benefits, and reduce costs." App'x 3300–01. It goes almost without saying that actually collecting tolls is the core of Cashless Tolling. And it would be difficult for TBTA to successfully collect tolls if it were unable to deter would-be toll violators through fines. The fines assessed in this case thus help TBTA prevent the traffic, safety, environmental, and fiscal harms that it would suffer if its Cashless Tolling system were ineffective.

*       *       *

In sum, we see no error in the District Court's determination as to each of the Bajakajian factors. The Plaintiffs have limited their arguments on appeal to whether the District Court correctly assessed each individual Bajakajian factor, and have not separately argued that the District Court incorrectly balanced those factors, as it understood them, in reaching the ultimate conclusion that the fines imposed were not excessive. The Plaintiffs have therefore abandoned any challenge to that balancing. Nonetheless, "[i]n applying Bajakajian, we determine de novo whether a fine is constitutionally excessive," Viloski, 814 F.3d

at 109 (quotation marks omitted), and "we heed the Supreme Court's instruction that the 'test for the excessiveness of a punitive forfeiture involves solely a proportionality determination,'" id. at 111 (emphasis omitted) (quoting Bajakajian, 524 U.S. at 333–34).  For the sake of completeness, we have independently weighed the Bajakajian factors and agree with the District Court's conclusion that the fines the Plaintiffs paid were not grossly disproportional to their conduct and thereby unconstitutionally excessive.  We therefore affirm the judgment in this respect.

### III

The Plaintiffs also contend that the District Court improperly granted summary judgment on their unjust enrichment claim under New York law.  "The elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  GFRE, Inc. v. U.S. Bank, N.A., 13 N.Y.S.3d 452, 454 (2d Dep't 2015) (quotation marks omitted); see also Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012).  The District Court granted summary judgment in TBTA's favor based on the Plaintiffs' failure to establish a genuine dispute of material

fact as to the third element.  The Plaintiffs now argue that the purported

payment of the maximum fines, the fact that Owens's vehicle registration was

suspended, and TBTA's failure to disclose its internal matrix for fine reductions

establish a genuine dispute of material fact as to whether the Plaintiffs

"involuntarily paid fines to TBTA" and whether "TBTA's retention of [the] fines

is inequitable."  Appellants' Br. 39.

We disagree.  The reasons that the Plaintiffs cite for the purported inequity

are all routine parts of a government system for enforcing traffic laws.  The

Plaintiffs violated TBTA regulations by failing to pay tolls.  It is not inequitable

for a violation of government regulations to result in a fine, and for nonpayment

of that fine to lead to harsher consequences.  The Plaintiffs develop no argument

why, given the failure of their constitutional claim, the District Court erred in

finding that "the fines paid were reasonable in light of the underlying tolls and

the harms caused by plaintiffs' non-payment."  <u>Rojas</u>, 2022 WL 748457, at *16.

We therefore also affirm the District Court's grant of summary judgment in

TBTA's favor on the unjust enrichment claims.

**CONCLUSION**

We have considered the Plaintiffs' remaining arguments on appeal, and we conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.